**AUTO CONVOY COMPANY et al.,
Appellants,**

**v.**

**RAILROAD COMMISSION OF TEXAS
et al., Appellees.**

No. B–4241.

Supreme Court of Texas.

April 3, 1974.

Robinson, Felts, Starnes & Nations, Mert Starnes and Paul D. Angenend, Lanham, Hatchell & Sedberry, Thomas F. Sedberry and Joe T. Lanham, Austin, for appellants.

John L. Hill, Atty. Gen., Rex H. White, Asst. Atty. Gen., Austin, James W. Hightower, Dallas, Doherty & Robertson, James M. Doherty, Austin, for appellees.

DANIEL, Justice.

This is a direct appeal by Auto Convoy Company and United Transports, Inc., from a judgment of the trial court sustaining an order of the Railroad Commission granting Jean Eddy a specialized motor carrier certificate.

Jean Eddy's application for authority to transport automobiles from Dallas and Grand Prairie to points in Texas and vice versa was granted in part by the Commission, being limited to used vehicles to and from Grand Prairie as follows:

"TO TRANSPORT: USED AUTOMOBILES AND USED PICKUP TRUCKS from Grand Prairie, Texas, to points in Texas, and vice versa, requiring the use of specialized equipment for the loading, unloading and transporting thereof."

Both Auto Convoy and United Transports, hereinafter referred to collectively as Appellants, held broader permits from the Commission authorizing each to transport "New and used motor vehicles between all points in Texas by both truck away and drive away methods over irregular routes, using all highways" of the State. Both protested Jean Eddy's application in all proceedings before the Commission, and both joined in this suit against the Commission and Eddy to declare her permit invalid and to enjoin any operations thereunder. They challenged the Commission's order in the trial court and here on two grounds: (1) that it is not supported by substantial evidence, and (2) that it does not contain findings of fact as required by law. The trial court found against Appellants on both points and entered a take nothing judgment against them. We affirm.

Jean Eddy's application, the opposition, and the evidence, all center upon the need for transportation service for used automobiles and pickups to and from the Big "D" Auto Auction held each week at Grand Prairie. There are basically two auctions conducted each Tuesday; the first being referred to as the "Chrysler" or "CLC" sale at which only current or last year models are sold; and the second being known as the "Consignment Sale," at which older models are sold. Collectively, these two sales handled 18,000 to 20,000 automobiles in 1973. Appellee, Jean Eddy, testified that she initiated the Big "D" Consignment Sale, owned it for about four years until she sold it in 1971 or 1972, and then worked as office manager for the sale until March of 1973. While owner of the Big "D" she had owned and operated two automobile transport trucks and trailers for transporting her own automobiles. It was her contention and that of her car dealer witnesses that the Big "D" sales and Grand Prairie were not adequately served by existing and available specialized motor carriers, while Appellants' witnesses testified that existing services were adequate and satisfactory.

■ In this appeal, it is logical that we should first examine the fact findings to determine whether they meet the statutory requirement. One of their purposes is to assist the courts in reviewing the evidence and the action of the Commission. Morgan Drive Away, Inc. v. Railroad Commission, 498 S.W.2d 147 (Tex.1973); Miller v. Railroad Commission, 363 S.W.2d 244 (Tex.1962). Sec. 5a(d) of Article 911b, Vernon's Ann.Civ.St., provides:

"The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service."

The Commission Examiner, after a ten page summary of the evidence, made the following relevant fact findings:

"This examiner finds that existing service to and from Grand Prairie is not adequate for the movement of used automobiles and used pickup trucks. The record reflects that a large auction sale, namely Big "D" Auto Auction is located in Grand Prairie. The record reflects that late model used vehicles are sold at the so called Chrysler sale, whereas older second hand vehicles are bought and sold at the consignment sale. This examiner finds that the existing carriers are performing an adequate service for those vehicles which are transported to and from the Chrysler sale whereas they are not offering an adequate service for vehicles transported to and from the consignment sale. Those individuals who have a need to transport vehicles to and from the consignment sale are being forced to use tow bars and illegal carriers to transport their vehicles at the present time."

The Commission Order of April 6, 1973, adopted the findings of the Examiner and made them a part of the Order, except insofar as they conflict with other findings which the Commission proceeded to make, in part as follows:

"THE COMMISSION FURTHER FINDS, contrary to the Examiner's Report (p. 11), that the existing service offered by Protestants for transporting late model used cars (CLC's) to and from the 'Chrysler Sale' at Grand Prairie, Texas is inadequate based on the testimony of Applicant's witnesses who deal at the 'Chrysler Sale' as well as the 'Consignment Sale.' It is expressly found that on August 8, 1972, that witness Helgren was unable to get 6 units purchased at the 'Chrysler Sale' transported from Grand Prairie without a delay of 7 to 10 days and that he experienced like responses from both Protestants in January, February, March and

September, 1972. It is further expressly found that witness Helgren has never been able to obtain reasonably prompt service from either United or Auto for similar shipments in ten years of doing business at Big D Auto Auction. The Commission finds that witness Lawless also purchases from the 'Chrysler Sale' and the 'Consignment Sale' and in July, 1972, was unable to get 9 vehicles moved from Grand Prairie without a 7 to 10 day delay after contacting both Protestants. It is found that witness Barker called both Protestants for 10 days commencing on or around March 1, 1972, to get a group of 18 'lease cars' (CLC's) that had been purchased in Grand Prairie shipped to Amarillo and Abilene and was unable to obtain service.

"THE COMMISSION FURTHER FINDS from the record that such delays as experienced by Applicant's witnesses result in a loss of revenue to them as dealers in 'CLC' vehicles purchased at Grand Prairie, Texas and that such delays are the result of inadequate service being offered by Protestants. . . .

"THE COMMISSION FURTHER FINDS that the 7 to 10 day delays experienced by Applicant's witnesses are unreasonable and inadequate to meet the needs of shippers of 'CLC' vehicles to and from Grand Prairie, Texas. The Commission finds that the testimony of Applicant's witnesses in regard to the shipment of 'CLC' vehicles to and from Grand Prairie, Texas establishes a need for the service authorized herein, and that such service will result in more prompt movement of 'CLC' vehicles as to mitigate said loss of shipper revenues and thereby promote the public convenience.

"THE COMMISSION FURTHER FINDS that the limitation or restriction of the grant to this Applicant to 'CLC', 'Chrysler Sale' or 'late model' used cars is administratively undesirable because such restriction would be impractical or

difficult to police and enforce; and, further, that such a restriction would be unduly burdensome to the Big D Auto Auction, because it performs both types of sales at the same location on the same day.

"THE COMMISSION FURTHER FINDS after considering the existing transportation facilities for the movement of all used automobiles and used pickup trucks from Grand Prairie, Texas to points in Texas and vice versa and the demand and need for additional service, as demonstrated by the testimony of Applicant's witnesses, that the service and facilities of the existing carriers are inadequate, that there exists a public necessity for the service authorized herein, and that the public convenience will be promoted by the granting of said application."

█ Appellants assert that the above findings of fact are insufficient to meet the statutory requirement as interpreted and applied in Morgan Drive Away, Inc. v. Railroad Commission, *supra*; Miller v. Railroad Commission, *supra*; Thompson v. Railroad Commission, 150 Tex. 307, 240 S. W.2d 759 (1951); and Thompson v. Hovey Petroleum Co., 149 Tex. 554, 236 S.W.2d 491 (1951). We disagree. These findings are clear and explicit. They point out in sufficient detail the inadequacies of the services and facilities of the existing carriers and the public need for the proposed service. The findings are not couched in terms other than as findings; neither are they mere conclusions, references to, recitals or summations of the evidence, or otherwise insufficient for reasons set forth in the above cases. On the contrary, they are findings upon the material issues to be reviewed and tested under the substantial evidence rule.

We next turn to the issue of whether the essential findings and the Commission's Order are reasonably supported by substantial evidence. In this we must and have considered the evidence, taken as a whole.

Alamo Express v. Union City Transfer, 158 Tex. 234, 309 S.W.2d 815 (1958); Hawkins v. Texas Company, 146 Tex. 511, 209 S.W.2d 338 (1948). Unquestionably, the evidence offered by the opposing parties is conflicting. The vast majority of United Transports' business is the transportation of new cars. Beginning in March of 1973, it had personnel soliciting business at the Big "D" auctions, but with little success. Auto Convoy has been soliciting business at both Big "D" sales weekly for six years. The General Manager of Big "D" has used Auto Convoy exclusively for inbound traffic of manufacturer's cars for five years and found its service to be excellent. Employees of both Appellants testified that they had the equipment available and had not turned down any requests for transportation. Two large used car buyers in Austin and Waco testified that Auto Convoy rendered them prompt and satisfactory service.

On the other hand, at least six auto purchasers from Austin, San Antonio, Waco, Brownsboro, Houston, and Cleveland testified that they could not obtain adequate service from the existing carriers to or from one or both of the Big "D" weekly sales. Most of them testified that they could not get the service from Appellants without waiting periods which would have worked hardships and losses on their purchases. Several testified that due to a lack of timely transportation services being available from existing carriers, they were compelled to use drivers, tow bars and illegal carriers to transport their vehicles to or from Grand Prairie. A majority of these witnesses testified to the inadequacy of existing transportation services to or from the Consignment Sale, but at least one of them testified to like inadequacy of existing services to and from the Chrysler Sale. Their testimony indicated a genuine public need for the service proposed by Mrs. Eddy to be centered upon and exclusively related to movements of used vehicles to and from the Big "D" auctions in Grand Prairie. In this connection, the evi-

dence shows no such concentration by Appellants of any exclusive service to the used car market at Grand Prairie. On the contrary, Appellants are engaged in statewide transportation. The evidence shows that they are the only carriers in Texas authorized to transport both new and used motor vehicles to and from all points in Texas; that transportation of motor vehicles to and from Grand Prairie accounts for only a small fraction of their annual multi-million dollar receipts from their statewide operations; and they could not point to any loss of revenue which they would suffer if the services proposed by Jean Eddy are placed in operation in accordance with the Commission's order. From our consideration of the above recited and all other evidence adduced in the trial court, we conclude that there is substantial evidence reasonably supporting the Commission's order, and that Appellants have failed to discharge their burden of proof to the contrary.

In a judicial review of a Railroad Commission order, it is well settled that the court does not substitute its judgment for that of the administrative agency. In this regard, the question for the courts is whether the contested order is reasonably supported by substantial evidence. In appeals, the burden is upon the complaining parties to show an absence of substantial evidence and that the orders are unreasonable and unjust to them. Sec. 20, Art. 911b, V.A.C.S.; Alamo Express v. Union City Transfer, *supra.* Where there is substantial evidence which would support either affirmative or negative findings, the order will be upheld, even though the Commission might have arrived at a decision contrary to that which the court might have reached. The correct test is whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the Railroad Commission must have reached in order to justify its action. Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022 (1942); Shupee v. Railroad Commission, 123 Tex. 521, 73

S.W.2d 505 (1934). In *Shell Oil Co., supra,* the court said:

" . . . In such a case the issue is not whether or not the agency came to the proper fact conclusion on the basis of conflicting evidence, but whether or not it acted arbitrarily and without regard to the facts. Hence it is generally recognized that where the order of the agency under attack involves the exercise of the sound judgment and discretion of the agency in a matter committed to it by the Legislature, the court will sustain the order *if the action of the agency in reaching such conclusion is reasonably supported by substantial evidence. . . .*"

Based upon all of the evidence adduced in the trial court, we cannot say that the Railroad Commission acted arbitrarily and without regard to the facts. On the contrary, we hold that the trial court correctly found that *the order in question is reasonably supported by substantial evidence.* Therefore, the judgment of the trial court is affirmed.