TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00493-CV






Texas Health Care Association, Appellant



v.



Health and Human Services Commission; Commissioner Michael McKinney;


Texas Department of Human Services; and Commissioner Burton Raiford, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 95-14711, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING 







 The Texas Health Care Association appeals from a take-nothing judgment ordered by the
district court in the Association's suit against the Texas Department of Human Services, and others, for
declaratory and injunctive relief. (1) We will affirm the judgment.

THE CONTROVERSY


 The Department regulates facilities that provide Medicaid patients long-term nursing care
under contracts with the Department. These contracts are denominated "provider agreements." The
provider agreements require the facilities to comply with regulations that govern the delivery of long-term
nursing care.

 The regulations authorize imposition of various coercive measures ("remedies") against a
facility that a Department inspection ("survey") finds deficient under the standards established in the
regulations. "Category I" remedies, authorized for minor deficiencies, include state "monitoring" and
mandatory "in-service training" for facility employees. "Category II" remedies, authorized for widespread
or serious deficiencies, include denying the facility money payments and imposing penalties of up to $3,000
per day. "Category III" remedies, authorized for the most serious or widespread deficiencies, include the
Department's assuming temporary management of the facility, immediate termination of the provider
agreement, and penalties of up to $10,000 per day. The regulations set forth certain conditions and
directions pertaining to the categories of remedies and the factors to be considered in applying them. (2)

 The Department has promulgated a rule that has no counterpart in the federal regulations. 
The parties refer to the rule as the "Three-Strike Rule." It provides that the Department may terminate a
nursing facility's provider agreement when the Department "has imposed required Category II or III
remedies on the facility three times within a [twenty-four month] period." For convenience hereafter, we
will refer to the rule as the "Three-Strike Rule." (3)

 The Association contends the Three-Strike Rule is ultra vires. On competing motions for
summary judgment, the district court denied the Association's request for declaratory relief to that effect
as well as the Association's application for injunctive relief against enforcement of the rule. The Association
contends in its first point of error that the trial court erred.


VALIDITY OF THE THREE-STRIKE RULE


 The legislature delegated to the Department, in the following terms, a broadly stated power
to make rules: "The Department shall establish methods of administration and adopt necessary rules for
the proper and efficient operation of the program." Tex. Hum. Res. Code Ann. § 32.021(c) (West 1990). 
We hold the Three-Strike Rule falls within the rulemaking power delegated in this statute. The Association
makes several arguments to the contrary. 

 The Association apparently contends the delegation of rulemaking power in section
32.021(c) is qualified by the terms of the preceding subsection (b), which directs that "[t]he Department
shall cooperate with federal agencies . . . in any reasonable manner necessary to qualify for federal funds." 
Tex. Hum. Res. Code Ann. §§ 32.021(b) (West 1990) (emphasis added), 22.002(c) (directing
Department to extend scope of its programs to "extent necessary" to secure matching federal funds,
22.002(d) (empowering Department to "promulgate policies and rules necessary" to secure matching funds
when a provision of state welfare law conflicts with federal law), 22.002(f) (authorizing Department to
contract with public and private agencies or individuals to accomplish purposes of programs authorized in
subsection (c)). Because the Three-Strike Rule is not found in the Code of Federal Regulations or federal
statutes, the Association reasons, the Three-Strike Rule cannot be "necessary" to secure matching funds
or to enter into contracts for obtaining nursing services under the Medicaid program. We do not believe
the legislature intended such a crabbed meaning when that body authorized the Department to "adopt
necessary rules for the proper and efficient operation of the program," as stated in section 32.021(c). The
words "proper and efficient operation" imply something beyond a restricted meaning that would limit the
Department's rulemaking power to what is necessary to secure matching federal funds and to enter into
contracts. The legislature's interest in a proper and efficient operation of the program is obvious--State
as well as federal funds are at stake. Moreover, the delegated power of rulemaking, especially in such
broad terms, implies in and of itself that the Department was not limited, in the legislature's view, to
administering solely the provisions of the federal statutes and Code of Federal Regulations governing
Medicaid programs. (4)

 The Association makes a stronger argument in its contention that the Three-Strike Rule is
contrary to certain legislative restrictions on the Department's statutory powers. The first restriction is
found in section 32.021(h) of the Human Resources Code which states as follows:


[T]he rules adopted by the department for certification of nursing facilities as being in
compliance with the requirements for participation in the state Medicaid program may not
be different from the standards imposed by federal law. This subsection does not
prevent the department from using any civil, administrative, or criminal remedy authorized
by state or federal law with respect to a facility that is in violation of a certification or
licensing requirement.



Tex. Hum. Res. Code Ann. § 32.021(h) (West 1990) (emphasis added). The second restriction is found
in a rider included in the 1995 appropriations act, stating as follows: "To regulate Medicaid certified
nursing facilities [the Department] shall adopt the federal standards and shall not implement additional
standards that exceed the scope of the federal guidelines unless required by state law." Act of May 23,
1995, 74th Leg., R.S., ch. 1063, art. II, § 1, 1995 Tex. Gen. Law 5242, 5412 (emphasis added). (5) The
Association reasons that the Three-Strike Rule imposes a "standard" different from any in the Code of
Federal Regulations or federal statutes, because the rule is not found in either. (6) We do not believe the rule
contravenes either restriction.

 The federal statutes and regulations utilize the word "standards" when referring to
quantitative and qualitative norms, such as "personnel standards," "health standards," "safety standards,"
"methods and standards" that will assure high quality care, and "performance standards." See 42 U.S.C.A.
§ 1396(a)(4), (9), (13), (17), (22); § 1396b(r)(6). The Department, for example, is obliged by federal
statute to "develop, impose, and enforce standards which must be met . . . in order to receive a license as
a nursing home administrator, which standards shall be designed to insure" good character and suitable
qualifications in such administrators. Id. § 1396g(c)(1). In the "enforcement process," on the other hand,
the federal statutes speak of "remedies" in cases where it is determined that a facility is deficient as to the
statutory norms. See id. § 1396r(h). The federal statute implicitly authorizes states to develop and apply
"remedies" in addition to the minimum "remedies" contemplated in the federal statute. Id. 1396r(h)(2). 
In the face of these governing distinctions, we do not believe the legislature, in its enactment of section
32.021(h) of the Human Resources Code and the 1995 appropriations-act rider, intended that the word
"standard" should include "remedies" as well as the aforementioned norms; indeed, the state statute, section
32.021(h) of the Human Resources Code, distinguishes between "standards" and "remedies." We have
found nothing to indicate a contrary intention on the part of the legislature.

 The Association argues the Three-Strike Rule is invalid, even if it be viewed as a "remedy,"
because it is inconsistent in theory with the remedies authorized in the Code of Federal Regulations and
federal statutes: whereas the federal remedies may be applied against providers only when they are not
in compliance with federal requirements, the Three-Strike Rule purports to authorize the remedy of
termination of a provider agreement based upon cumulative violations in the past even though the provider
may not be deficient at the time termination is imposed as a remedy. We believe the distinction is
immaterial. The federal remedies are minimum remedies and states are expressly authorized to develop
alternative remedies that may be imposed if approved, as the Three-Strike Rule was, by federal
authorities. See 42 U.S.C.A. § 1396r(h)(2)(A); 42 C.F.R. § 488.406(a)(9) (1996).

 In its second point of error, the Association complains the trial court abused its discretion
in not awarding the Association attorney's fees. The Association brought statutory causes of action under
the Uniform Declaratory Judgments Act, Texas Civil Practice and Remedies Code, section 37.009, which
provides for the recovery of attorney's fees when "equitable and just," and under section 2001.038 of the
Administrative Procedure Act, which does not authorize recovery of attorney's fees. We assume for
purposes of discussion that the former statute authorizes recovery of attorney's fees in the present litigation
against the State. The only possible basis for inferring an abuse of discretion is that the trial judge's decision
not to award either party its attorney's fees was legally unreasonable in the factual-legal context of the case. 
See Landon v. Jean-Paul Budinger, Inc., 724 S.W.2d 931, 939-40 (Tex. App.--Austin 1987, no writ). 
We see nothing inequitable or unjust in the trial court's decision not to award either party attorney's fees. 
That decision instead appears reasonable in light of the record, which shows only that the parties had a
good-faith dispute about questions of law, determinable from undisputed facts, which was resolved on
motions for summary judgment. Nothing in the record suggests a reason why the trial judge should have
disturbed the equilibrium by shifting all costs and fees to one party. We hold accordingly.

 For the reasons given, we affirm the trial-court judgment.


 

 John Powers, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: July 24, 1997

Publish 

1. The Texas Health Care Association is a non-profit corporation that represents providers of long-term nursing care under the Medicaid program. The Association brought two statutory causes of action
for declaratory relief. The first is that authorized in the Uniform Declaratory Judgments Act. Tex. Civ.
Prac. & Rem. Code Ann. §§ 37.001-011 (West 1986 & Supp. 1997). The second is that authorized to
test the validity or applicability of a rule promulgated by an administrative agency, as set out in the
Administrative Procedure Act. Tex. Gov't Code Ann. § 2001.038 (West Supp. 1997).


 Other defendants below were the Texas Health and Human Services Commission, 
Commissioner Michael McKinney, and Commissioner Burton Raiford. All are appellees. See Tex. Gov't
Code Ann. § 531.021 (West Supp. 1997); Tex. Hum. Res. Code Ann. §§ 22.002; 32.021 (West 1990
and Supp. 1997). For convenience, we refer in our opinion only to the Department of Human Services.
2. The categories of remedies, the sanctions, and the terms and conditions governing their imposition
are found in 42 C.F.R. §§ 488.400-.456 (1996). See also id. § 488.331; 40 Tex. Admin. Code
§§ 19.2146 79.1601-1614 (West 1997).
3. The Three-Strike Rule is found in title 40 of the Texas Administrative Code, section 19.2146. 
It is presently in effect. Two other rules assailed by the Association in the trial court have been repealed. 
These were found in title 20 Texas Register at page 2063 (a rule that was never codified before its repeal
effective July 31, 1995) and in title 40 of the Texas Administrative Code, section 19.2208(a)(2) (repealed
effective May 1, 1995). With regard to the repealed rules, we believe any controversy is moot.
4. The Three-Strike Rule is, of course, a legislative rule, and its reasonableness and necessity are
matters for the Department's initial determination. In support of the rule, the Department argues the rule
is necessary to meet the problem of facilities that are chronically deficient under the conditions of their
provider agreements, that correct their deficiencies temporarily as a result of State inspections, then lapse
again into noncompliance until the next inspection. The Association has not attacked the reasonableness
of the rule, but only its promulgation in the first place, which the Association contends was outside the
Department's rulemaking power because that power was restricted to what was necessary to secure
matching federal funds.
5. We assume for purposes of discussion that the rider is constitutional.
6. The federal regulations and statutes themselves contemplate that the states shall have considerable
discretion in formulating their Medicaid programs, so long as the federal requirements are met. See
Greenery Rehabilitation Group, Inc. v. Sabol, 841 F. Supp. 58, 60 (S.D.N.Y. 1993); District of
Columbia Podiatry Society v. District of Columbia, 407 F. Supp. 1259,1263-64 (D.D.C. 1975).


ociation brought statutory causes of action under
the Uniform Declaratory Judgments Act, Texas Civil Practice and Remedies Code, section 37.009, which
provides for the recovery of attorney's fees when "equitable and just," and under section 2001.038 of the
Administrative Procedure Act, which does not authorize recovery of attorney's fees. We assume for
purposes of discussion that the former statute authorizes recovery of attorney's fees in the present litigation
against the State. The only possible basis for inferring an abuse of discretion is that the trial judge's decision
not to award either party its attorney's fees was legally unreasonable in the factual-legal context of the case. 
See Landon v. Jean-Paul Budinger, Inc., 724 S.W.2d 931, 939-40 (Tex. App.--Austin 1987, no writ). 
We see nothing inequitable or unjust in the trial court's decision not to award either party attorney's fees. 
That decision instead appears reasonable in light of the record, which shows only that the parties had a
good-faith dispute about questions of law, determinable from undisputed facts, which was resolved on
motions for summary judgment. Nothing in the record suggests a reason why the trial judge should have
disturbed the equilibrium by shifting all costs and fees to one party. We hold accordingly.

 For the reasons given, we affirm the trial-court judgment.


 

 John Powers, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: July 24, 1997

Publish 

1. The Texas Health Care Association is a non-profit corporation that represents providers of long-term nursing care under the Medicaid program. The Association brought two statutory causes of action
for declaratory relief. The first is that authorized in the Uniform Declaratory Judgments Act. Tex. Civ.
Prac. & Rem. Code Ann. §§ 37.001-011 (West 1986 & Supp. 1997). The second is that authorized to
test the validity or applicability of a rule promulgated by an administrative agency, as set out in the
Administrative Procedure Act. Tex. Gov't Code Ann. § 2001.038 (West Supp. 1997).


 Other defendants below were the Texas Health and Human Services Commission, 
Commissioner Michael McKinney, and Commissioner Burton Raiford. All are appellees. See Tex. Gov't
Code Ann. § 531.021 (West Supp. 1997); Tex. Hum. Res. Code Ann. §§ 22.002; 32.021 (West 1990
and Supp. 1997). For convenience, we refer in our opinion only to the Department of Human Services.
2. The categories of remedies, the sanctions, and the terms and conditions governing their imposition
are found in 42 C.F.R. §§ 488.400-.456 (1996). See also id. § 488.331; 40 Tex. Admin. Code
§§ 19.2146 79.1601-1614 (West 1997).
3. The Three-Strike Rule is found in title 40 of the Texas Administrative Code, section 19.2146. 
It is presently in effect. Two other rules assailed by the Association in the trial court have been repealed. 
These were found in title 20 Texas Register at page 2063 (a rule that was never codified before its repeal
effective July 31, 1995) and in title 40 of the Texas Administrative Code, section 19.2208(a)(2) (repealed
effective May 1, 1995). With regard to the repealed rules, we believe any controversy is moot.
4. The Three-Strike Rule is, of course, a legislative rule, and its reasonableness and necessity are
matters for the Department's initial determination. In support of the rule, the Departmen