**TEXAS HOME MANAGEMENT, INC.**
d/b/a Appleby Home, Appellant,

v.

**TEXAS DEPARTMENT OF MENTAL HEALTH AND MENTAL RE-
TARDATION, Appellee.**

No. 03–96–00705–CV.

Court of Appeals of Texas,
Austin.

July 24, 1997.

Order Overruling Rehearing Oct. 2, 1997.

J. Stephen Dillawn, Small, Craig & Werkenthin, Austin, for appellant.

Ian James Quincy Quinlan, Assistant Attorney General, Administrative Law Division, Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Texas Home Management, Inc. d/b/a Appleby Home appeals the district court's order affirming the decision of the Texas Department of Mental Health and Mental Retardation (MHMR) terminating Appleby Home's Medicaid contract due to the imposition of three vendor holds within an eighteen-month period. Appleby Home contends MHMR lacks the statutory authority to impose vendor holds on mental health care facilities and to terminate the facilities' Medicaid contracts pursuant to the "Three–Strike Rule." Appleby Home also challenges two of the three vendor holds as unsupported by substantial evidence. We will affirm the district court's judgment upholding MHMR's order.

## THE REGULATORY SCHEME

Appleby Home is an intermediate care facility, certified under state and federal law to provide services to persons with mental retardation who are eligible to receive Medicaid benefits. *See* Social Security Act, 42 U.S.C.A. §§ 1396–1396v (West Supp.1997); 25 Tex. Admin. Code § 406.51 (1997). Under the Medicaid program, the federal government provides states with matching funds at a percentage of state expenditures for health care to the needy. 42 U.S.C.A. § 1396 (West Supp.1997). To qualify for these matching funds, providers must comply with federal regulations. *See* 42 U.S.C.A. § 1396r–3 (West Supp.1997). In order to maximize benefits, the Texas Legislature designated the Texas Health and Human Services Commission as the agency to administer federal Medicaid benefits. *See* Tex. Gov't Code Ann. §§ 531.003(1), 531.021 (West Supp.1997). The Commission delegates the authority to operate the Medicaid program to the various health and human service agencies. *See* Act of March 9, 1995, 74th Leg., R.S., ch. 6, § 1, 1995 Tex. Gen. Laws 27, 27–28. MHMR is the state agency currently responsible for administering the Medicaid program as it applies to intermediate care facilities for the mentally retarded. *Id.*

Pursuant to this scheme, Appleby Home and MHMR entered into a "provider agreement," or contract, under which Appleby Home receives Medicaid payments for providing services to Medicaid recipients residing in its facility. In exchange, Appleby Home agrees to follow all applicable federal and state statutes and rules governing intermediate care facilities. *See* 25 Tex. Admin. Code § 406.2 (1997). The federal requirements, referred to as "Conditions of Participation," require an intermediate care facility to meet several "Standards" in order to participate in the Medicaid program. *See* 42 C.F.R. § 483.410–.480 (1995). To ensure compliance with the Conditions of Participation, the Texas Department of Human Services conducts periodic surveys to investigate facility and client records, observe facility practices and procedures, and interview facility personnel, clients and their families.[1] After completing this investigation, the surveyor determines whether the facility has violated any federal or state requirement. If the cited deficiencies pose immediate jeopardy to the health or safety of clients, MHMR temporarily suspends payment of benefits to the facility; this is known as a "vendor hold." *See* 25 Tex. Admin. Code § 406.62(b)(2) (1997). The facility must correct the deficiencies within sixty days or MHMR cancels the facility's contract.[2] *Id.* MHMR will also cancel a facility's contract if the facility is cited with three vendor holds in any eighteen-month period. *Id.* § 406.62(b)(3). The parties refer to this as the "Three–Strike Rule." Because MHMR imposed vendor holds against Appleby Home on May 31 and October 14, 1994, and May 26, 1995, it proposed to cancel Appleby Home's contract, effective June 2, 1995. Appleby Home requested a hearing to appeal the second and third vendor holds and the proposed termination of its Medicaid contract. MHMR issued an order upholding both vendor holds and terminating Appleby Home's Medicaid contract. Appleby Home then sued for judicial review in district court and sought a declaration that Rule 406.62 is invalid because MHMR lacks statutory authority to impose vendor holds and to terminate a facility's contract pursuant to the Three–Strike Rule. The district court denied the declaratory relief and affirmed the agency's final order.

## DISCUSSION

*Statutory Authority*

In its first point of error, Appleby Home challenges the validity of Rule 406.62. The legislature generally charged the Commission, and in turn MHMR, with maximizing federal funds and improving the regulation of human services providers. Tex. Gov't Code Ann. § 531.003(1), (6)(G); Act of March 9, 1995, 74th Leg., R.S., ch. 6, § 1, 1995 Tex. Gen. Laws 27, 27–28. The specific legislative directives are found in Chapters 22 and 32 of the Human Resources Code. The Code does not expressly grant the authority to impose vendor holds or terminate contracts; appellant contends the statute does not implicitly authorize it either.

An agency rule is presumed to be valid, and the party challenging the rule has the burden to show the agency did not have the authority to promulgate it. *See Chrysler Motors Corp. v. Texas Motor Vehicle Comm'n,* 846 S.W.2d 139, 141 (Tex.App.—Austin 1993, no writ). In determining whether an agency has exceeded its rulemaking authority, we must decide whether the rule is in harmony with the general objectives of the act involved. *See Railroad Comm'n v. Lone Star Gas Co.,* 844 S.W.2d 679, 685 (Tex.1992); *Gerst v. Oak Cliff Sav. & Loan Ass'n,* 432 S.W.2d 702, 706 (Tex. 1968). To make this assessment, we examine all applicable provisions, not just the particular provision in question. *See Gerst,* 432 S.W.2d at 706.

**1.** Prior to 1994, the Department of Human Services was both the contracting and surveying agency. That year MHMR became the contracting agency, and the Department of Human Services retained the responsibility of conducting compliance surveys.

**2.** The withheld funds are released when the facility corrects the problem within the specified time period. 25 Tex. Admin. Code § 406.62(b) (1997).

Another panel of this Court today rejects a similar challenge to the Three–Strike Rule. *Texas Health Care Ass'n v. Tex. Dep't of Human Serv.*, 949 S.W.2d 544 (Tex. App.—Austin 1997, no writ h.). We join in holding that section 32.021(c) of the Human Resources Code, which authorizes the agency to "establish methods of administration and adopt necessary rules for the proper and efficient operation of the program," constitutes a broad grant of rulemaking power, and that no other statutory provision restricts the scope of agency rules that might be necessary to the administration of the program. We agree that the authority to impose vendor holds and terminate the facility's contract for repeated noncompliance is consistent with the stated purpose of the Medical Assistance Act: "[T]o enable the state to provide medical assistance on behalf of the needy individuals and to enable the state to obtain all benefits for those persons authorized by the Social Security Act or any other federal act." Tex. Hum. Res.Code Ann. § 32.001 (West 1990).

In fulfilling the Act's purpose, the Department is required to cooperate with the federal government in the administration of the Medicaid program. *Id.* § 22.002(b). Appleby Home contends MHMR's methods of enforcement must conform to the enforcement provisions in the federal Medicaid Act and its regulations in 42 CFR §§ 442.110–.119. We find no such requirement in the state legislation and conclude that the Department may promulgate *remedies* designed to deter violations and enhance compliance with the regulations in order to maximize the payment of benefits to Texas citizens. *Tex. Health Care Ass'n*, 949 S.W.2d at 547–48. Rule 406.62 does not, as Appleby Home argues, give the agency blanket authority to terminate a facility's contract for "virtually any reason." Rather, it addresses specific and repeated violations of the federal regulations, violations which must be avoided if the facility is to receive federal matching funds. Termination under the Three–Strike Rule is not permanent—the agency may be readmitted to the program once it corrects its deficiencies. 25 Tex. Admin. Code § 406.62(b)(3).

We hold that Rule 406.62 is a valid exercise of the Department's statutory authority. Point of error one is overruled.

*Substantial Evidence Review*

In point of error two, Appleby Home contends that the imposition of the second vendor hold, on October 14, 1994, is not supported by substantial evidence. MHMR adopted the surveyors' finding that Appleby Home violated the condition of participation set out in 42 CFR § 483.420 by (1) failing to protect two of its residents from the physical abuse of B.M.M., another resident who had a history of violence, and (2) failing to report a resident's allegations of sexual abuse. In arguing the findings are not supported, appellant contends the minor cuts and bruises B.M.M. inflicted do not constitute physical abuse, which is defined by the federal guidelines [3] as posing a threat of severe injury or death. It also contends its staff took steps to reduce B.M.M.'s aggressive behavior and actively intervened to prevent serious injury to the other residents.

An agency's interpretation of its own regulation is entitled to deference by the courts so long as it is reasonable. *Turner Brothers Trucking Co., Inc. v. Commissioner of Ins. of State of Tex.*, 912 S.W.2d 386, 390 (Tex.App.—Austin 1995, no writ). In conducting a substantial evidence review, we must determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency reached. *See Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex.1988), *cert. denied*, 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989); *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984). If substantial evidence would support either affirmative or negative findings, the reviewing court must uphold the order, resolving any conflicts in favor of the agency's decision. *Auto Convoy Co. v. Railroad Comm'n*, 507 S.W.2d 718, 722 (Tex.1974). The test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the

3. The United States Department of Health and Human Services promulgated the State Operations Manual which sets forth interpretative guidelines to be used by survey agencies.

action taken by the agency. *Charter Medical,* 665 S.W.2d at 452.

■ Staff reports and testimony by investigator Madeline Seale detailed the following incidents: B.M.M. stabbed a staff member with a fork; a few days later, he slapped a female resident and kicked her in the stomach; a couple of weeks later, he cursed and struck a staff member and another resident; the next day, B.M.M. bit a resident under his right breast, inflicting a cut that required medical treatment. Ms. Seale personally observed numerous instances of similar disorderly conduct that confirmed her conclusion that B.M.M. was out of control and that Appleby Home had failed to take appropriate steps to curb his behavior. Additionally, direct care staff stated that the facility had not trained them on how to control B.M.M.'s behavior.

Appellant also contends that failing to protect residents from abuse does not rise to the level of a violation of a federal "Condition of participation" necessary to impose a vendor hold. Federal regulation 483.420 is entitled "Condition of participation: Client protections." Included within this section are four categories of "standards" covering a total of thirty-four types of violations. Protecting clients from physical, verbal, sexual or psychological abuse or punishment is required under the standard "Protection of clients' rights." The Department's rules authorize it to impose a vendor hold when violation of the federal rules places a resident in immediate jeopardy. 25 Tex. Admin. Code § 406.62(b)(1) (West 1996). "Immediate jeopardy" is defined as

a situation in which a facility's noncompliance with one or more *standards* for participation poses a serious threat to the health and safety of an individual(s) residing in the facility, making immediate corrective action necessary.

*Id.* § 406.62(a)(2) (emphasis added).

The agency concluded that its finding that the facility failed to protect clients from physical abuse "results in the automatic determination of noncompliance with the [Condition of participation]." It also concluded that the violations posed immediate jeopardy to the residents' health and safety. The guidelines instruct surveyors to make their findings with respect to the degree of severity, frequency of occurrence and impact of active treatment. Ms. Seale noted that the "sheer numbers alone indicate that B.M.M.'s behavior [was] inappropriate, [his] behavior was out of control and the facility did not adequately address his behavior and was not qualified to meet those needs." She determined that the severity and frequency of his behavior coupled with the staff's failure to intervene, threatened the safety and welfare of the residents at Appleby Home. We conclude that the agency's finding that Appleby Home's failure to protect residents from physical abuse posed immediate jeopardy to the facility's residents is supported by substantial evidence and justified the October 14 vendor hold.

In challenging the October 14 vendor hold, Appleby Home also attacks MHMR's finding that Appleby Home failed to report allegations of sexual abuse. *See* 42 CFR § 483.420(d)(2) (1995); 40 Tex. Admin. Code § 90.42(e)(1)(B) (1997). Although the agency's action is supportable by the facility's failure to protect residents from physical abuse, in an abundance of caution we will review the record to determine whether there is support for this finding as well. Appleby Home contends that it did not have a duty to report allegations of sexual abuse made by a resident with a history of fabricating such allegations. MHMR again relied upon staff reports and the surveyors' testimony. The complainant informed the surveyors that another resident had repeatedly forced her to engage in sexual intercourse over a week-long period, and that she had complained to her house-parent. The house-parent confirmed the report but dismissed the complaint because of the resident's history of fabrication. The next day the complainant informed a direct care staff member of the forced sexual assaults; this staff member also disregarded the allegations.

■ Appleby Home contends it was not required to report these allegations of sexual abuse because it did not have "cause to believe" that the allegations were true. *See* Tex. Health & Safety Code Ann.

§ 242.122(a) (West 1992). MHMR found that the caretakers were required to report the allegations even though the victim had a history of fabricating stories. Construction of a statute by an administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820 (Tex.1993). The agency is the final arbiter of the meaning, weight, and credibility assigned to various parts of the evidence; we are limited to the issue of whether the agency record as a whole demonstrates that the agency's actions were unreasonable. *Auto Convoy Co.*, 507 S.W.2d at 722. We hold MHMR's interpretation of the statute is consistent with its responsibility to ensure the health and safety of residents in intermediate care facilities. Because MHMR's findings supporting imposition of the second vendor hold are supported by substantial evidence, we overrule the second point of error.

In point of error three, Appleby Home contends that the third vendor hold, imposed May 26, 1995, is unsupported by substantial evidence. MHMR adopted the surveyors' finding that Appleby Home violated 42 CFR § 483.10 by failing to repair and maintain its sanitation system over a one-year period.

█ Appleby Home challenges the finding by claiming that it timely and adequately dealt with the septic tank problems and the problems did not pose a direct or immediate health or safety hazard. MHMR relied upon the testimony of Ray Vick, a Texas Department of Human Services health surveyor with over twenty-one years of experience. Mr. Vick first became aware of the problems with Appleby Home's septic system during a survey he conducted in May 1994. He noticed a pool of water above the septic tanks and concluded that the tank was discharging its contents under the surface of the ground. He also realized that some of the electrical components of the tank were not functioning properly. Based on his observations, Mr. Vick had concerns about the health and safety of the residents, particularly since wastewater serves as a medium for disease. Once cited for the deficiency, Appleby Home promised to repair the septic system by July 1994. The repair date was later extended to December 1994. When he visited in February 1995, Vick found that the system still had not been repaired. Appleby Home then promised to replace the septic system by April 1, 1995. A May 1995 survey indicated that all the problems cited a year earlier remained. Given this evidence of the malfunctioning sanitation system and Appleby Home's procrastination, reasonable minds could have concluded that the septic tank posed a threat to the safety and health of the residents. Accordingly, we overrule the third point of error.

## CONCLUSION

Finding no error, we affirm the district court's judgment upholding MHMR's order.

## ON MOTION FOR REHEARING

We believe it necessary to comment on matters raised in Appleby Home's motion for rehearing.

Appleby Home contends we err in sustaining the Three–Strike Rule by implication from the authority delegated to the Department in section 32.021(c) because enforcement powers cannot be delegated by implication. *See Kawasaki Motors Corp. v. Texas Motor Vehicle Comm'n*, 855 S.W.2d 792, 798–99 (Tex.App.—Austin 1993, no writ) (agency not empowered to adjudicate contract claims between private individuals arising out of franchise agreement because such power not implied in statute making certain acts unlawful). The Department's power to cancel a medical-assistance contract is not derived by implication from section 32.021(c); it is *expressly* contemplated in section 32.034. The Three–Strike Rule is merely a rule-based norm for *when* the power to cancel may be exercised.

Appleby Home points to a 1997 legislative amendment to section 32.021 that expressly authorizes application of the Three–Strike Rule to nursing facilities but does not mention facilities of the kind operated by Appleby Home. This amendment, Appleby Home contends, demonstrates that the legislature could not have intended section 32.021(c) to

authorize the Three–Strike Rule because in the case of amendatory acts it is presumed that some *change* in existing law was intended. We reject the theory. There is indeed a presumption that an amendatory enactment intends a change in legal rights, but it is only a presumption. Here, the presumption is defeated and the amendment must be construed as interpretative only because the amendment is *consistent with* the agency's interpretation of section 32.021(c) as giving the Department authority to promulgate the Three–Strike Rule. *See* Norman J. Singer, *Sutherland Statutory Construction* § 22.30 at 268 (5th ed.1993); *see e.g., Adams v. Texas State Bd. of Chiropractic Exam'rs,* 744 S.W.2d 648, 656 (Tex.App.—Austin 1988, no writ) (statutory amendment defeats presumption of intended change in law when amendment merely reiterates construction placed on amended act by courts).

■ Appleby Home contends we have erred in our decision because its contract with the Department contains no provision for withholding vendor payments and absent such a contract provision the payments may not be withheld. *See Texas Dep't of Health v. Texas Health Enters., Inc.,* 871 S.W.2d 498 (Tex.App.—Dallas 1993, writ denied). Section 32.034(b) declares "[t]he department's authority to withhold payments *shall be* established by contract" (emphasis added). The necessary predicate to Appleby Home's contention is that the foregoing sentence is mandatory and not directory. We hold it is directory only. The statute does not provide that payments may be withheld *only if* such a provision is included in the contract; if it did, it would be mandatory. But it does not. It is therefore directory only, notwithstanding the use of the word "shall," because that is the manifest intent of section 32.034(b). The penultimate sentence of section 32.034(b) gives the Department, in *express* terms, the power to withhold payments; consequently the last sentence of the section cannot be viewed as expressing a legislative intention that the power to withhold payments does not exist absent such a provision in the contract. *See Federal Crude Oil Co. v. Yount–Lee Oil Co.,* 122 Tex. 21, 52 S.W.2d 56, 60–62 (1932) (statutes prescribing time in which pubic officers shall perform specified duties

are generally deemed directory and are so construed unless context indicates time is of the essence of the duty); *Schlemmer v. Board of Trustees,* 59 S.W.2d 264, 265–66 (Tex.Civ.App.—Waco 1933, writ ref'd) (statutory direction that county board of trustees "shall" perform an act construed as directory, and not mandatory, where statutory context indicated such to be legislature's intention).

We have considered the other matters raised in the motion for rehearing and find them to be without merit. We overrule the motion.