

# NUMBER 13-22-00461-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JOSE ALFREDO JIMENEZ,**                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                       **Appellee.**

---

### On appeal from the 24th District Court
### of Jackson County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Tijerina, Silva, and Peña
### Memorandum Opinion by Justice Tijerina

Appellant Jose Alfredo Jimenez challenges his conviction for theft of property, namely United States Currency, of a value of less than $2,500, a state jail felony, enhanced to a third-degree felony.[1] *See* TEX. PENAL CODE ANN. §§ 12.35(c)(2)(B), 31.03.

---

[1] The offense was enhanced under the theft statute by two prior convictions and under the general enhancement statute by appellant's prior felony conviction for attempted murder.

Appellant was sentenced to ten years' confinement. By two issues appellant contends that the evidence is insufficient to support a conclusion that this case is a criminal matter as opposed to a civil matter and a finding that appellant intended to deprive the owner of her money. We affirm.

## I. STANDARD OF REVIEW AND APPLICABLE LAW

In reviewing the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). Direct and circumstantial evidence are equally probative. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

We measure the sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327 (quoting *Malik*, 953 S.W.2d

2

at 240). Under the Texas Penal Code, a person commits the offense of theft "if he unlawfully appropriates property with intent to deprive the owner of property." *See* TEX. PENAL CODE ANN. § 31.03(a). The appropriation of the property is unlawful as charged here if "it is without the owner's effective consent." *See id.* at § 31.03(b)(1). Consent is not effective "if induced by deception." *Id.* at § 31.01 (3)(A). For purposes of the theft statute, "deception" includes, among other things, the following:

> (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;
>
> . . . .
>
> (E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

*Id.* at § 31.01(1)(A), (E).

"In a theft case arising from a contract, the State must prove that the accused intended to deprive the owner of the property when it was taken." *Johnson v. State*, 560 S.W.3d 224, 227 (Tex. Crim. App. 2018). The State may prove intent "by proof that the accused engaged in other similar, recent transactions." *Id.* (citing TEX. PENAL CODE ANN. § 31.03(c)(1)).

## II. PERTINENT FACTS

The evidence at trial established that Carrie Stastny was a member of an online support group of family members of inmates. At that time, Stastny's daughter was serving a ten-year sentence in prison. Eventually appellant contacted Stastny offering to help get

3

her daughter released from prison. Stastny testified appellant claimed to be a paralegal in "good standing" licensed in the State of Texas working "under an attorney." Appellant also claimed that he had graduated from a paralegal school with honors. In addition, appellant told Stastny that he had been very successful in getting convictions overturned.

According to Stastny, appellant promised to file a writ of habeas corpus pursuant to Texas Code of Criminal Procedure article 11.07. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 § 1 (stating that article 11.07 sets out the procedures for an application for writ of habeas corpus). Stastny said that appellant told her "[h]e would do all the footwork, and the attorney would do the signing of the documents because a paralegal has to work under an attorney."

When asked by the State to explain in general the gist of the correspondence that appellant sent her, Stastny replied, "It's a bunch of lies . . . [i]t's just garbage really." One of the documents is "a legal binding contract" between Stastny and appellant "saying that he's going to perform a service for $600." Stastny relayed that she paid appellant $309 and another person, Bonita Reha, paid him $675 on Stastny's behalf.

Stastny testified that appellant sent her correspondence stating that he had filed a document "with the criminal appeals court." According to Stastny, appellant told her in other correspondence that he had hired professionals to assist him in filing the application for "a writ of habeas corpus," including a private investigator named Linmarie Garsee and a "psychologist or psychiatrist" named Dr. Mohammed Hamza. Additionally, appellant told Stastny that he had filed a motion for discovery with the Austin County District Attorney's office. According to Stastny, appellant told her that her daughter's victim admitted to Dr.

4

Hamza that he had lied. Additionally, appellant told her that her daughter's trial counsel "was going to sign an affidavit or give an affidavit" admitting he was ineffective. Stastny agreed with the State that appellant's statements and documents influenced her and Reha to pay appellant the contract amount.

Stastny testified that appellant told her that a bench warrant had been issued to move her daughter from prison to the Austin County jail and that she would then be released because her daughter's due process rights had been violated. Stastny stated that appellant claimed her daughter "was coming home."

Stastny became suspicious, and she called her daughter's trial counsel, Calvin Garvie, who "said there's no way. What I was being told, there's no way." Stastny stated she then called the assistant district attorney, Brandy Robinson, to ask why her daughter had not been released, and Robinson informed her that her daughter was still in prison and had not been transferred to the county jail. When Stastny contacted appellant, "he said I shouldn't call them because I am going to alert them on what's going on." Subsequently, Stastny complained to the unauthorized practice of law committee that appellant was practicing paralegal services without a license. On redirect examination, the State asked if she was the only person from her support group to whom appellant made these claims. Stastny replied, "No, unfortunately."

Natalie Love testified that appellant told her that "he could do an 11.07," which Love believed to be a "writ" for her husband, who was in prison at that time. Love stated that appellant claimed that he was "a paralegal working up under some other" attorney. According to Love, appellant promised to file the writ, and "he was going to do us a

5

medical leave," which appellant stated, "was guaranteed it was going to happen." Appellant promised that Love's husband would be released due to his kidney disease. Love said she signed a contract and paid appellant over $700. Appellant lied to Love about a hearing that did not occur. Love eventually asked appellant to refund the money, but he did not do so. Love said appellant's statements influenced her to contract with him.[2]

Lakisha Galvan testified that appellant likewise offered to get her husband released from prison by filing an 11.07 writ. In addition, appellant informed Galvan that he was a paralegal who worked with an attorney as "partners." According to Galvan, appellant told her that "he was going to Bastrop County where [her husband's] case was placed." Galvan said, "I asked the district clerk if there had been any motions filed on my husband's appeal. She told me it hasn't been opened or anything since . . . after he was sentenced." Galvan testified that appellant did not do as he promised, her husband was not released on that basis, and she paid appellant $600. Galvan demanded her money back, but appellant refused to refund it.

Melissa Jackson Booker testified that appellant told her that "he was a paralegal working under a lawyer" and that he could file a "writ" to get her husband released from prison. Booker stated that appellant said that after reviewing the case, "he could get [her husband] out on time served and that he would have him home by his birthday and then have me pay a retainer." Booker paid appellant $875 that she had borrowed. Galvan's husband was not released from prison, and Galvan asked appellant to refund her money,

---

[2] Love's husband subsequently died.

which he refused to do.

Robinson testified that she prosecuted Stastny's daughter. Robinson stated that in the original case Stastny's daughter's trial counsel, Garvie, employed Garsee as his private investigator and had billed the trial court for her service in the original case. Likewise, Garvie billed the trial court $5,000 for Dr. Hamza's services, who was the professional that evaluated Stastny's daughter in preparation for her "possible trial." The State asked, "If someone was representing this as an investigator and a doctor they hired to examine the victim in the case . . . and used this as supporting documents to that, how would you describe that?" Robinson replied, "That would not be correct. Mr. Garvie is the one who hired these people." Robinson reviewed the documents that appellant provided to Stastny showing that he hired Dr. Hamza and Garsee and stated that appellant's claim that he had hired those professionals after the case closed "would not be true." The State asked, "Is deception use of an untruth to influence somebody?" Robinson responded, "That's how I would define it."

Robinson said that the county had not received notice of the writ that appellant claimed to have filed on behalf of Stastny's daughter, that she would have "received service" automatically, and that there would be both a physical and electronic copy of the documents filed. Here, no documents had been filed on behalf of Stastny's daughter.

Robinson spoke to appellant who admitted that although he was a paralegal, he was "not actually working under an attorney." Robinson explained, "A paralegal would have no authority to do anything legally for anybody without working under an attorney, so he can't be giving out legal advice or picking up clients or anything like that unless

7

you're working under an attorney."

### III. DISCUSSION

By his first issue, appellant contends that the evidence is insufficient to support a conclusion that this case is criminal as opposed to contractual in nature. By his second issue, appellant contends that there is no evidence that he intended to deprive Stastny of her money.

Viewing the evidence in the light most favorable to the verdict, a fact finder could have reasonably found that appellant lied to Stastny about everything he promised to do under the contract. He lied about working under an attorney and that the attorney would sign the necessary documents. The evidence supports a finding that appellant knew that he could not practice as a paralegal without working for an attorney.

In addition, appellant lied when he told Stastny that he had filed a writ in the court of criminal appeals, that the court had granted the relief requested, and that Stastny's daughter would be transferred to the county jail and released. Furthermore, appellant's claims that he had hired Garsee to serve as a private investigator and Dr. Hamza to evaluate the victim of the crime were patently false; those claims were based on documentation showing that Garvie had hired those professionals in the original case. Thus, it was reasonable for the jury to have inferred that appellant knowingly lied about hiring those professionals. Appellant's lies were told to Stastny from the start of their interactions, and appellant admitted to Robinson that he did not work "under an attorney," meaning he knew he could not perform any of the services he promised to do.

From the evidence presented, the jury was free to infer that when appellant entered

the contract with Stastny, he was aware that he would not be able to perform what he promised and that his promises to do so were deceptive. *See Johnson*, 560 S.W.3d at 229 ("Viewing the evidence in the light most favorable to the convictions, a rational jury could conclude that Appellant accepted payment for cremations that he knew he would not perform in both counts of the indictment."); *Taylor v. State*, 450 S.W.3d 528, 536 (Tex. Crim. App. 2014) ("Only when, at the time that money is exchanged pursuant to the contract, the accused either intends not to, or at least knows he will not, perform his part of the bargain may he be held criminally liable for theft."). In addition, evidence was presented from which the jury could have properly inferred that appellant engaged in other acts of deception and false promises. *See Johnson*, 560 S.W.3d at 228 (criticizing the lower appellate court for "fail[ing] to weigh the evidence of Appellant's other recent, similar transactions in which he deceived cremation customers"). Specifically, evidence was presented that appellant made similar promises to other women that he would file writs in the courts and that their loved ones would be released from prison. However, in those instances, appellant did not file the proper documentation, as he would not be allowed to do because he is not an attorney and was not working "under" one.

Accordingly, we conclude that based on the evidence and reasonable inferences from that evidence, a rational fact finder could have found that appellant intended to deprive Stastny of her money when he took it beyond a reasonable doubt. *See Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99. Therefore, we are unable to conclude that this is a contractual civil matter as opposed to a criminal matter. We overrule appellant's two issues.

## IV.   CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
10th day of August, 2023.