**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 94-40710

---

PEARL CHEZEM, ET AL.,

Plaintiffs-Appellees,

TEXAS DEPARTMENT OF HUMAN SERVICES
ET AL.,

Defendants-Third Party-
Plaintiffs-Appellees,

versus

BEVERLY ENTERPRISES-TEXAS, INC., ET AL.,

Intervenors-Defendants-
Appellants.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

(October 2, 1995)

Before POLITZ, Chief Judge, HILL[*] and DeMOSS, Circuit Judges.

POLITZ, Chief Judge:

Beverly Enterprises-Texas, John R. Folowell, Mary P. Folowell, and Woodhaven, Inc. appeal an adverse summary judgment. Finding no reversible error, we affirm.

---

[*] Circuit Judge of the Eleventh Circuit, sitting by designation.

Beverly Enterprises and its principals, the Folowells and Woodhaven, were nursing home owners and operators. They brought suit in Texas state court against the Texas Department of Human Services, challenging its decision to assign the Medicaid contract of a competitor, Regency Terrace Nursing Center, Inc., to its successor, Carriage House Manor, Inc. Neither Carriage House nor its residents was joined in the state court action. The Beverly Enterprises group obtained an injunction against the transfer as violative of state regulations. Efforts by Carriage House and certain residents to intervene were objected to by Beverly Enterprises. The district court declined to consider their motion on the grounds that it no longer had jurisdiction.

Pending the Carriage House appeal of that decision,[1] residents filed suit to enjoin TDHS from terminating their Medicaid benefits. Carriage House intervened in the new action, as did the Beverly Enterprises group, which joined TDHS in removing to federal court. The federal district court entered summary judgment in favor of the plaintiffs and, after unsuccessful attempts at post-judgment relief, the Beverly Enterprises defendants timely appealed.

At the threshold the appellants invoke the Anti-Injunction Act[2] as a bar to a federal declaratory judgment that would have the effect of nullifying the state court judgment. As the Supreme

---

[1] The court of appeals ultimately decided that the "Final Summary Judgment" was not final and dismissed the appeal for want of jurisdiction. No further action was taken.

[2] 28 U.S.C. § 2283.

Court has taught, the Anti-Injunction Act has no application herein because Carriage House and its residents were neither parties nor privies of parties to the state court action.[3]  The appellants further contend that the district court should have abstained because the suit poses "difficult questions of state law involving policy considerations."  To the contrary, the dispositive issue herein involves the question of federal preemption of state law.[4] The Texas administrative agency charged with implementing the state law acknowledges federal preemption.  We find no fault in the district court's refusal to abstain.  The appellants did not name the plaintiffs herein as parties in the state court action and they opposed their effort to intervene.  Further, we agree with the district court that a party removing a case to federal court, as the appellants did herein, may not thereafter advocate abstention.

On the merits we address whether a federal regulation which requires the automatic assignment of a Medicaid contract to the new owner upon change of ownership preempts a TDHS regulation which prohibits transfer of the contract if ownership changes during the

---

[3]See **County of Imperial v. Munoz**, 449 U.S. 54 (1980), appeal after remand, **Munoz v. County of Imperial**, 667 F.2d 811 (9th Cir.), cert. denied, 459 U.S. 825 (1982); **Pelfresne v. Village of Williams Bay**, 917 F.2d 1017, 1020 (7th Cir. 1990) ("Only a party, or, . . . one who is in privity with a party, is barred by the Anti-Injunction Act.").

[4]Cf. **New Orleans Public Service, Inc. v. Council of City of New Orleans**, 491 U.S. 350 (1989) (**Burford** abstention is not appropriate in suit claiming that local ratemaking authority is preempted by federal law).

first three years.[5]  It is undisputed that Regency Terrace, which was in bankruptcy, transferred its nursing home to Carriage House during the three-year period.  The federal regulation, 42 C.F.R. § 442.14, provides:

> (a)  Assignment of agreement.  When there is a change of ownership, the Medicaid agency must automatically assign the agreement to the new owner.
>
> (b)  Conditions that apply to assigned agreements.  An assigned agreement is subject to all applicable statutes and regulations and to the terms and conditions under which it was originally issued, including, but not limited to, the following:
>
> > (6) Compliance with any additional requirements imposed by the Medicaid agency.

The appellants contend that section 442.14(b)(6) qualifies section 442.14(a), and therefore, that TDHS's three-year rule is a valid condition to the automatic-assignment requirement.  We are not persuaded.  The interpretation appellants suggest contravenes the plain language of the regulation, which requires automatic assignment without qualification.  Because the TDHS three-year rule is in direct conflict with the automatic-assignment requirement, it is to be given no effect for it is preempted by federal law.[6]

AFFIRMED.

---

[5]The regulation is a condition for the grant of a waiver to TDHS's moratorium on the award of new Medicaid contracts.

[6]See **Hetzel v. Bethlehem Steel Corp.**, 50 F.3d 360 (5th Cir. 1995) (state law is preempted when it conflicts with federal law; a conflict occurs when compliance with both federal and state regulation is impossible or when state law is an obstacle to the achievement of congressional purposes).