Robert R. FOREMAN, Appellant,

v.

TEXAS EMPLOYMENT COMMISSION, Appellee.

No. 3-90-114-CV.

Court of Appeals of Texas, Austin.

April 8, 1992.

**320**

Stephen Yelenosky, Legal Aid Soc. of Central Texas, Austin, for appellant.

Dan Morales, Atty. Gen., Anthony Aterno, Asst. Atty. Gen., Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Robert Foreman, appellant, applied to the Texas Employment Commission (the Commission) for an extension of retraining benefits under the Trade Adjustment Assistance Program (Assistance Program) established by the Trade Act of 1974, (the "Act") 19 U.S.C. §§ 2101–2495 (1988 & Supp. I 1989).[1] The Commission, the authorized state agency delegated the responsibility for administering benefits under the Act, denied his application. Foreman then challenged the Commission ruling in the county court at law of Caldwell County, which issued a judgment upholding the denial of his benefits. Foreman appeals that judgment to this Court on both a question of law and a substantial-evidence review. We will affirm the judgment of the trial court.

### THE CONTROVERSY

After four and one-half years of employment, Foreman was laid off by an oil-industry firm in December 1986. He applied for full Texas unemployment insurance bene-

fits, which he received from January through July 1987, a total of twenty-six weeks. In August 1987, Foreman obtained a temporary job in Ozona, Texas, working at an oil and gas company for the months of August, September, October and early November. While temporarily away from home, Foreman had the post office in Luling put a "hold" on his mail. Foreman returned to Luling and collected his mail approximately once or twice a month until his temporary job ended.

In August 1987, the Secretary of Labor certified the eligibility of laid-off workers from Foreman's previous employer to receive assistance under the Trade Adjustment Assistance Act. Shortly after the Secretary of Labor's certification, the Commission sent Foreman a courtesy notice letter of his eligibility for Trade Readjustment Allowance (TRA) benefits.[2] Although this notice letter was postmarked October 1987, Foreman claims he did not receive it until July 1988; he blamed the delay on the "hold procedures" at the Luling post office. Foreman also claims he contacted the Commission immediately on receipt of the notice.

Foreman's initial application for benefits on July 11, 1988, fell within the time limit to obtain basic TRA benefits, but past the deadline for seeking a supplemental twenty-six weeks of benefits covering living expenses while in school. By this suit, Foreman seeks recovery of those supplemental benefits.

Foreman claims that his delay was the fault of the post office and that he qualifies for a good-cause exception to the deadline. Foreman seeks to have a good-cause exception from Texas law incorporated into the federal program. Foreman also claims that he presented sufficient credible evi-

---

1. Both parties agree that the law applicable to this cause is the Act as it was in effect in 1987, before the 1988 amendments (both to the statute and the implementing regulations). Therefore, all citations in this opinion will be to "Trade Act § ___" referring to the Act as amended through 1986. Pub.L. No. 93–618, Ch. 2, 88 Stat. 2019 (1975), *amended by* Pub.L. No. 97–35 §§ 2501–2414, 95 Stat. 881 (1981), *amended by* Pub.L.

No. 99–272 §§ 13001–13008, 100 Stat. 300 (1986).

2. This notice, part of the custom and practice of the Commission, *was not required* under the Act until its amendment in 1988. Pub.L. No. 100–418, § 1422, 102 Stat. 1244 (1988).

dence to the Commission to qualify for this exception.

## THE STATUTORY AND REGULATORY FRAMEWORK

### The Trade Act

Congress enacted chapter two of the Trade Act of 1974, titled Adjustment Assistance for Workers, to assist workers whose jobs were eliminated or reduced due to import competition. Pub.L. No. 93–618, § 2, 88 Stat.1981 (1975). There are several types of benefits available to workers under the plan, including readjustment allowances (similar to unemployment) and tuition for training programs.

The basic benefit provisions of the Act allow for fifty-two weeks of TRA basic benefits, with an offset for the state unemployment benefits available to the covered employee. Workers are eligible to receive payments under basic benefits for 104 weeks after the first week, within the certification period, when the worker has exhausted state unemployment benefits. Application can be made any time within this payment period. Trade Act § 233. An additional allowance of up to twenty-six weeks of benefits in order to complete retraining is also available for covered workers, but only if those workers have applied to an approved training program not more than 210 days after either: 1) the date of first eligibility certification, or 2) the week of the employee's most recent separation. Trade Act § 233 (original limit 180 days, extended to 210 days by Pub.L. No. 97–35, § 2505, 95 Stat. 883 (1981)). This application deadline for the additional benefits is the issue in this case.

### The Commission's Role

The Act authorizes the Department of Labor to enter into agreements with state agencies to administer this program as agents of the federal government. Trade Act § 239. The Act's provisions govern the state agency in making payments to workers, although state law governs the review process. *Id.* The availability and disqualification provisions of state unemployment-insurance law also apply except where inconsistent with the Act or its implementing regulations. Trade Act § 234.

### The Good–Cause Exception

■ Under the "Timeliness Regulation," issued as part of the implementation of the Texas Unemployment Compensation Act, Tex.Rev.Civ. Stat.Ann. art. 5221b–1 et seq. (1987 & Supp. 1992), the presumption of timely delivery of a notice letter may be overcome by credible evidence. Tex.Emp. Comm'n, 40 Tex.Admin.Code § 301.32 (West Supp.1991–92).[3] Foreman contends that the Commission is required to apply this state policy to its administration of the federal act. He further argues that, under Commission policy, his proof of untimely delivery prevented the Commission from denying him supplemental benefits.

## THE COMMISSION'S DETERMINATION

On July 11, 1988, Foreman applied for benefits with the Assistance Program staff person at the Commission office in San Antonio. He claims the staff member told him that he had missed the deadline for supplemental benefits but could still receive basic benefits, which he began receiving in July.[4] In September of 1988, Foreman enrolled in an approved training program. He applied for and was officially denied the additional twenty-six weeks of benefits as a result of missing the retraining-application deadline. However, he continued to receive full tuition for the retraining program and his basic-living-expense benefits until early January 1989. In Octo-

---

3. Tex.Emp.Comm'n, 14 Tex.Reg. 3703 (1989) (adopting 14 Tex.Reg. 1454 (1989), *as corrected by* 14 Tex.Reg. 1837 (1989)), *amended by* 14 Tex.Reg. 5075 (1989) (adopting 14 Tex.Reg. 3983 (1989) (proposed rule)). Prior to the promulgation of this rule, the timeliness exception existed as part of the policy manual of the Commission.

4. There is a contradiction in the record as to whether Foreman was informed of the expired deadline at that time. Although Foreman testified at trial that he was immediately told about his ineligibility, one of the letters he submitted to the Commission stated that he had not learned of his ineligibility until he entered a training program and applied for the supplemental benefits.

ber of 1988, Foreman requested a hearing on this ineligibility decision.

Foreman's first hearing was in November 1988, at which time his claim was denied because he had applied for retraining after the 210–day deadline set by the Act. Foreman appealed and his second hearing took place in March 1989. In a decision dated March 20, 1989, the hearing officer for the Commission again concluded that the retraining application was untimely. That decision discussed Commission guidelines for timeliness under the state unemployment-compensation act, which presumed delivery on the date of the notice letter postmark unless there was credible evidence of delayed delivery. The Commission opinion found that Foreman presented no credible evidence that he actually received his notification letter late.

Foreman subsequently appealed to the Commissioners and submitted a written statement concerning his late receipt of the notice letter. The statement was co-signed by the postmaster in Luling and acknowledged by a notary. The Commission affirmed the previous decision, with one dissent, in April 1989.

On rehearing in May 1989, Foreman submitted a formal affidavit by the Luling Postmaster. The Postmaster described the "hold" procedures at the Luling post office. Under those procedures, mail was put in a "hold case," and in the event of a mail overflow, in a second "hold case." The postmaster suggested the possibility that Foreman's notice letter had been placed in the overflow "hold case," and that when Foreman picked up his mail, the clerk on duty may have overlooked the notice letter. According to the postmaster, this procedure *could* increase the likelihood that mail delivery was delayed. However, the Postmaster was unable to state whether the eligibility-notice letter was in fact untimely delivered.[5]

More importantly, the Postmaster's affidavit offered no explanation whatsoever as to why the notice letter would not have been delivered to Foreman during the period of time between November of 1987, when he returned home to Luling, and July of 1988, the date when Foreman contends he ultimately received the notice letter. In September 1989, the Commission again found Foreman ineligible to receive the supplemental TRA benefits.

Foreman brings forth two points of error. The first point of error contends that the Commission and the trial court erred as a matter of law by failing to apply the state law's "timeliness exception" to Foreman's federal claim. The second point of error contends that the Commission's decision is not supported by substantial evidence.

## DISCUSSION AND HOLDING

This Court will first examine the legal basis for the Commission's decision. Foreman argues in separate sub-points that: (1) the regulations in Part 617 of the Code of Federal Regulations require the use of the Texas good-cause exception; and (2) the Act itself requires use of the Texas good-cause exception. In response, the Commission argues that applying the state timeliness guidelines to create an exception to the statutory deadline for extended TRA benefits conflicts with federal rules and is prohibited under the statutes and regulations governing the Assistance Program. We do not find it necessary to address this disagreement of the parties, because the Commission *did* apply the timeliness guidelines from state law to Foreman's claim.[6]

In the March 20, 1989, decision, the Commission's hearing examiner specifically considered Commission guidelines for timeliness:

> Under TEC guidelines, a document mailed to a party is presumed to be received if the document was mailed to the complete, correct address of record. This presumption falls only where there

---

5. We note that the year given for the hold on Foreman's mail in the affidavit is 1988. Apparently this date has been viewed as a typographical error by the parties and court below; we will continue to view it this way.

6. These guidelines were the same as those eventually enacted as part of the Commission's formal rule, Tex.Emp.Comm'n, 40 Tex.Admin.Code § 301.32 (West Supp.1991–92).

is tangible, credible, and persuasive evidence to establish non-delivery or delayed delivery of the document. Testimony from the adversely affected party standing alone is not sufficient to overcome the presumption.

\* \* \* \* \* \*

The claimant's testimony maintained that he had difficulty receiving his mail from the postal service. However, the claimant did not provide any documentary, corroborating evidence from the postmaster to establish delayed delivery or non-delivery of the document. Consequently, under the above TEC guidelines, I find that the claimant did receive notification of his eligibility under the Trade Act in October of 1987.

All subsequent decisions of the Commission affirm that decision by finding the application untimely. Therefore, the Commission continued to apply the timeliness guidelines but found that Foreman's evidence did not overcome the presumption of timely delivery. Since we hold that the Commission did apply the state guidelines, Foreman's first point of error is overruled.

■■■ In his second point of error, Foreman challenges the Commission's denial of benefits on the basis that its decision is not supported by substantial evidence. Appeals from decisions of the Commission "require a trial de novo with a substantial-evidence review." *Mercer v. Ross,* 701 S.W.2d 830, 831 (Tex.1986); Tex.Rev.Civ. Stat.Ann. art. 5221b–4(i) (1987 & Supp. 1992). The decision of the Commission must be upheld if there is substantial evidence at the trial to support that decision. *Mercer,* 701 S.W.2d at 831.

Under Commission rules, a rebuttable presumption was created that the notice letter was timely delivered from the date of mailing. Tex.Emp. Comm'n, 40 Tex.Admin.Code § 301.32(b) (Supp.1991–92). Foreman insists that his uncontroverted testimony corroborated by the postmaster's affidavit rebuts this presumption, as a matter of law. We disagree. The Luling Postmaster's affidavit before the Commission did not state that the piece of mail in question was not timely delivered. Instead, the affidavit said that hold procedures for mail would, at most, increase the *possibility* of a piece of mail being mislaid. Further, the affidavit leaves completely unexplained Foreman's contention that he did not receive the notice letter until July 1988, despite the fact that he had been back in Luling for approximately nine months and had apparently been regularly receiving his other mail.

■■■ Where there is evidence on both sides of an issue, the appellate court must uphold the agency as long as reasonable minds could have reached the conclusion the Commission reached in order to justify its decision. *Auto Convoy Co. v. Railroad Comm'n,* 507 S.W.2d 718, 722 (Tex.1974); *see also Haas v. Texas Emp. Comm'n,* 683 S.W.2d 462 (Tex.App.1984, no writ). Proof of the October–1987 postmark on the notice letter sent to Foreman which presumptively was timely delivered, was sufficient evidence to support the Commission's decision, and reasonable minds could find that neither Foreman's testimony nor the Postmaster's affidavit required a contrary conclusion. Appellant's second point of error is overruled.

We affirm the trial court judgment upholding the decision of the Commission.

CARROLL, C.J., not participating.