TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00764-CV







Lone Star R.V. Sales, Inc., Appellant



v.



Motor Vehicle Board of the Texas Department of Transportation


& Winnebago Industries, Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. GN-001364, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING






 Lone Star R.V. Sales, Inc. ("Lone Star") appeals (1) from a district court judgment
affirming an order of the Texas Motor Vehicle Board ("Board") that found good cause existed to 
terminate the dealer franchise agreement (2) between Lone Star and Winnebago Industries, Inc.
("Winnebago"). (3) The order rejected a proposal for decision issued by an administrative law judge
following a contested case hearing involving Lone Star and Winnebago and adopted new findings
of fact and conclusions of law. In five issues, Lone Star challenges (i) the Board's consideration of
untimely exceptions to the proposal for decision filed by Winnebago, (ii) the Board's decision to
allow termination of Lone Star's franchise based on "threats of violence" supported by evidence not
in the record, and (iii) the action of the Board in reversing the proposal for decision prepared by the
administrative law judge. We affirm the district court judgment.


BACKGROUND


 Lone Star owns and operates a motor home dealership in Houston, Texas. 
Winnebago is a manufacturer of recreational vehicles, and Lone Star is a franchised Winnebago
dealer. The dealership is owned by Bruce Byrne who, along with his sons, Scott and Gordon Byrne,
opened Lone Star in 1985. In 1994, the Winnebago dealer in Harris County closed its dealership. 
Winnebago negotiated with Lone Star to become the replacement dealer. The parties signed the first
franchise agreement in November 1994 and have renewed their agreement each year.

 Due to ongoing disputes on various subjects, from 1996 through 1998 the business
relationship between Winnebago and Lone Star soured. On August 28, 1998, Winnebago notified
Lone Star of its intent to terminate the dealer franchise agreement, citing the following reasons: 
(1) failure to honor warranty obligations, (2) poor sales history, (3) disparagement of Winnebago's
products, (4) lack of commitment to Winnebago's products, and (5) a history of verbal abuse and
threats made by Lone Star personnel against Winnebago employees. 

 In response to Winnebago's notice of termination, Lone Star filed a Notice of Protest
of Franchise Termination with the Board, invoking its statutory right to protest the termination. See
Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 5.02(b)(3) (West Supp. 2001). (4) The contested case was
tried before an administrative law judge on February 16 and 17, 1999. On September 13, the
administrative law judge issued a proposal for decision, finding that good cause had not been shown
for the termination of Lone Star's franchise agreement and recommending that the protest be granted.

 The proposal for decision was scheduled to be considered by the Board at its meeting
on November 4, 1999. Because Winnebago's exceptions to the proposal were not timely filed with
the Board, Lone Star did not respond to the exceptions prior to the meeting. Winnebago filed a
motion asking the Board to consider its late-filed exceptions or, in the alternative, for a continuance
of the hearing. At the meeting, after deciding to proceed with the hearing, the Board entertained
argument of counsel on whether the proposal for decision should be adopted. After a lengthy
hearing, the Board decided to table the matter until its February meeting, directing its staff to prepare
an alternative set of findings and conclusions "that would support termination of the franchise."

 At the Board's February meeting, the administrative law judge presented three
proposed orders finding good cause for termination, one of which was adopted by the Board. Lone
Star then filed this lawsuit, seeking judicial review of the Board's order. Tex. Gov't Code Ann.
§ 2001.171 (West 2000). A Travis County district court affirmed the Board's order. Lone Star
appeals the district court judgment.


DISCUSSION


I. Termination of Franchise Agreement

 Manufacturers are prohibited from terminating a dealer's franchise unless certain
conditions are met. Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 5.02(b)(3)(A). A manufacturer
seeking to terminate a franchise must provide the dealer with written notice not less than sixty days
before the effective date of termination setting forth the specific grounds for termination and
informing the dealer that he may be entitled to file a protest with the Board. Id. § 5.02(b)(3)(A)(i)-(iii). If the dealer files a timely protest, the Board must hold a contested case hearing to determine
whether the manufacturer has established by a preponderance of the evidence that there is good cause
for the proposed termination. Id. § 5.02(b)(3)(A)(iv). In determining whether good cause has been
established, the Board must consider "all the existing circumstances," including:


(A) the dealer's sales in relation to sales in the market;


(B) the dealer's investment and obligations;


(C) any injury or benefit to the public;


(D) the adequacy of the dealer's service facilities, equipment, parts and personnel;


(E) whether warranties are being honored by the dealer;


(F) the parties' compliance with the franchise agreement; and


(G) the enforceability of the franchise agreement from a public policy standpoint.



Id. § 5.02(b)(5). The Act is enforced by the Board "to provide for compliance with manufacturer's
warranties, and to prevent frauds, unfair practices, discriminations, impositions, and other abuses
of our citizens." Id. § 1.02. 

 Winnebago sought termination of Lone Star's franchise, alleging that Lone Star's
history of verbal abuse and threats, its disparagement of and lack of commitment to Winnebago
products, and its failure to achieve sales objectives and to honor warranty obligations had harmed
consumers in the Houston area. Finding both parties to blame for the deteriorating relationship, the
administrative law judge concluded that Winnebago failed to establish by a preponderance of
credible evidence that good cause existed for the termination of the agreement. She recommended
that the Board grant Lone Star's protest and enter a cease and desist order against Winnebago,
prohibiting it from terminating the franchise agreement.

 In rejecting the proposal for decision, the Board considered "all the existing
circumstances," and concluded that Winnebago had established by a preponderance of the credible
evidence that good cause existed for the termination of the agreement. Id. § 5.02(b)(5). The Board
then determined that the protest would be dismissed and that no further action would be taken to
prevent the termination of the franchise agreement.


II. Lone Star's Challenges to the Board's Decision 

 A dealer whose franchise has been terminated by a final order of the Board is entitled
to judicial review of the order in a Travis County district court. Id. § 7.01(a). The district court
reviews final actions of the Board under the substantial evidence rule. Id. Under the substantial
evidence rule, a reviewing court may not substitute its judgment for the judgment of the agency on
the weight of the evidence on questions committed to agency discretion. Tex. Gov't Code Ann.
§ 2001.174 (West 2000). A reviewing court must reverse or remand the case for further
proceedings if the complaining party's substantial rights have been prejudiced because the agency's
findings, inferences, conclusions, or decisions are:


(A) in violation of a constitutional or statutory provision;


(B) in excess of the agency's statutory authority;


(C) made through unlawful procedure;


(D) affected by other error of law;


(E) not reasonably supported by substantial evidence considering the reliable and
probative evidence in the record as a whole; or


(F) arbitrary or capricious or characterized by an abuse of discretion or a clearly
unwarranted exercise of discretion.



Id. § 2001.174(2)(A)-(F).



A. Board's Decision to Consider Winnebago's Untimely Exceptions

 In its first three issues, Lone Star complains that, by considering Winnebago's
untimely exceptions, the Board engaged in an unlawful procedure, prejudicing Lone Star's
substantial rights. See id. § 2001.174(2)(C). Lone Star urges that the Board's action was unlawful
and constituted an abuse of discretion. See id. § 2001.174(2)(C), (D), (F). Because the record
reflects that the Board acted lawfully and within its discretionary authority, we reject Lone Star's
challenge.

 The facts concerning Winnebago's exceptions are undisputed. The administrative
law judge served a copy of the proposal for decision on the parties on September 13, 1999, and
notified them that the proposal was set for consideration by the Board at its scheduled meeting on
November 4. On October 7, the due date for exceptions to be served, (5) Winnebago mailed its
exceptions to the Motor Vehicle Division ("Division") and to Lone Star's counsel. Although Lone
Star received a copy of the exceptions on October 12, the Division did not receive these exceptions
until October 27 due to an apparent postal error. (6)

 Meanwhile, on October 19, an agency employee telephoned Winnebago's counsel
regarding another filing. For the first time, counsel for Winnebago learned that the Division had not
received its mailed exceptions. In response to the call, counsel forwarded a second set of exceptions
to the Division. The Division received the exceptions on October 20. The following day, Brett Bray,
the Division Director, acknowledged the untimely receipt of Winnebago's exceptions. By facsimile,
he advised: "We will mail your submission and Protestant's response to the Board members. 
However, we are informing the Board your submission is untimely and should not be considered."
By a letter hand-delivered to Director Bray on the same day, Lone Star's counsel complained that
he did not have an adequate opportunity to respond and urged that the untimely exceptions not be
considered by the Board. (7)

 In an October 21 memorandum to the Board enclosing the untimely exceptions,
Director Bray wrote: "In keeping with our policy of ensuring that you receive all materials
submitted, we are forwarding Winnebago's Exceptions to the Proposal for Decision and the response
thereto from Protestant. However, you are not required to read or consider this material in making
your decision on November 4."

 On October 22, Winnebago filed a motion asking that the Board consider the
exceptions or, in the alternative, grant a continuance of the hearing scheduled for November 4. The
motion for continuance contained an offer to pay Lone Star's reasonable costs resulting from a
continuance. Lone Star did not respond to the motion. On October 29, with notice to the parties,
Bray forwarded Winnebago's motion to the Board, recommending two options: that the Board
consider the matter on its merits at the upcoming hearing or grant the motion for continuance until
the February Board meeting. 

 At the outset of the November hearing, Board Chairman Bob Barnes carefully
delineated the two options available to the Board:


[O]ne option on this case is to continue it, move it forward to the next meeting. 
Another one is to go ahead and hear it on this one. It's kind of my feeling that we
ought to go ahead and hear the case this time, and I wanted to see what the feeling
on the Board was on that. Anybody have an objection to that or any comment?



In the absence of a response, Chairman Barnes proceeded to a hearing on the merits by calling on
counsel for Winnebago and for Lone Star. Neither counsel requested a continuance or objected to
proceeding on the merits. Both counsel presented oral argument, summarizing arguments delivered
in writing in their respective exceptions to the proposal for decision.

 At the conclusion of the arguments and a lengthy discussion among the Board
members, the Board voted to table the matter until the February 2000 Board meeting. But they
instructed the staff to develop an alternative set of findings and conclusions supporting termination
of the franchise. 

 During the interim period between the November and February Board meetings, Lone
Star did not file a reply to Winnebago's exceptions. At the February Board meeting, in addition to
the original proposal for decision favorable to Lone Star, the administrative law judge had prepared
three alternative proposals supporting termination. With the four proposals before them, the Board
again heard argument of counsel. Before turning to the merits of his protest, counsel for Lone Star
argued that Winnebago's exceptions were untimely filed, "yet at the last meeting, without discussion,
they were considered, and that came out to the detriment of the protestant." Counsel did not request
leave to file a response nor did he explain why he had not filed a response between the two hearings.

 Lone Star urges on appeal that the Board improperly considered Winnebago's
exceptions to the detriment of Lone Star's substantial rights. Because Director Bray's letter advised
the parties that Winnebago's exceptions "should not be considered" and his memorandum advised
the Board that they were "not required to read or consider" them, Lone Star complains that Bray
misstated the law and that the Board violated the law when it considered the exceptions. By
allowing Winnebago to file its exceptions thirteen days after they were due, Lone Star contends that
it was denied the right to file a reply to the exceptions because Lone Star could not file a reply by
the fifteenth day before the Board meeting as required by the Board's rules. See 16 Tex. Admin.
Code § 101.63 (2001). Arguing that they were "ramrodded," Lone Star complains that the rules were
manipulated to deprive it of a fair, just, and impartial adjudication of its rights. See id. § 101.01. 

 The Board rules of practice and procedure provide for the filing of exceptions within
20 days after the date of service of the hearing officer's report. Id. § 101.60. Section 101.60 also
addresses extensions of time:


Requests for extension of time within which to file exceptions shall be filed with the
hearing officer and a copy of such request shall be served on all other parties in
interest. The hearing officer shall promptly notify the parties of his or her action
upon the request and shall allow additional time only in extraordinary circumstances
where the interest of justice so requires.



Id. (emphasis added). Winnebago's motion asking the Board to consider its exceptions or to grant
a continuance satisfied the requirements of section 101.60. See id. The motion set forth the
circumstances of the service of the exceptions and was accompanied by an affidavit of counsel. The
Board properly allowed Winnebago's exceptions to be considered because Winnebago's motion
demonstrated, as provided by this rule, "extraordinary circumstances where the interest of justice so
requires" such relief. Id. Moreover, by facsimile to the parties on October 29, Director Bray advised
the parties of his notice to the Board of its two options: that the Board proceed to the merits on
November 4 or grant a continuance until February.

 The rules further address the filing of documents for consideration by Board
members:


 Any document filed by a party to a contested case for consideration by the
members of the Board in their decision of the case must be filed with the Board at
least 15 days prior to the date of the Board meeting at which the case is scheduled for
consideration and decision. Any document not filed within such time will not be
considered by the members of the Board at that meeting. . . . For good cause shown,
the Board may waive or shorten the requirement for the filing of all documents prior
to any Board meeting.


Id. § 101.63 (emphasis added). The Board may consider only the materials timely submitted. 
Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 3.08(g) (West Supp. 2001).

 It undisputed that Lone Star's counsel received a timely copy of the
exceptions on October 12, 1999, well in advance of the hearing. On October 20, when
counsel for Winnebago learned that the Division had not received the exceptions, he filed
a duplicate set. The mailed exceptions arrived at the Division on October 27. The record
supports Winnebago's position that the late filing was due to a postal error. 

 Lone Star did not file a response to Winnebago's exceptions, request
additional time to respond to the exceptions, or file a motion for continuance of the
November hearing. Lone Star never sought to file a reply on shortened time. When
Winnebago filed a motion asking the Board to consider the exceptions or to grant a
continuance, Lone Star did not respond. At the November hearing, Lone Star did not object
to proceeding on the merits or otherwise request a continuance. Apart from Lone Star's
October 21 letter urging the Board not to consider Winnebago's exceptions, Lone Star made
no effort to object to the Board's decision to go forward on November 4. At no time did
Lone Star's counsel suggest that his client desired a continuance, that his client was
prejudiced by the Board proceeding to the merits, or that it was error for the Board to
consider the merits under such circumstances. By not responding to the motion and by
acquiescing, without objection, to the Board's decision to proceed to a hearing on the merits,
Lone Star waived its complaint.

 When the protest was tabled for further consideration until the February
meeting, Lone Star again failed to respond to the exceptions. At the February hearing, Lone
Star's counsel commented that the exceptions were untimely filed, but he lodged no
objection to proceeding with the hearing and made no further request to submit a reply. 
Because rule 101.63 requires any document to be filed with the Board within fifteen days of
the Board's consideration of the matter and decision, Lone Star had ample time before the
February hearing to file its reply. See 16 Tex. Admin. Code § 101.63. At oral argument on
appeal, Lone Star's counsel contended that Lone Star did not file a reply between the
November 1999 and February 2000 hearings because the Board essentially made its final
determination in November and any reply after the November hearing was futile. The record
persuades us otherwise.

 At the February hearing, the administrative law judge presented three new
proposals supporting termination of the franchise. Chairman Barnes reminded the Board that
it could allow additional argument. The Board agreed to allow further argument by the
parties' counsel. After argument by Lone Star's counsel urging the Board not to adopt any
of the three new proposals, counsel introduced the company's owner, Bruce Byrne, to
explain why he wanted the Winnebago franchise. Byrne described how the termination
would affect his employees and business. 

 At the conclusion of the Board's discussion of its various options, a Board
member made a motion to adopt the administrative law judge's original proposal for
decision. When the motion failed for lack of a second, another member moved that one of
the revisions be adopted. In a close vote, the motion carried. (8) Contrary to Lone Star's
suggestion that the rules were indiscriminately ignored and "sharp practice" was
countenanced by the Board, the Board allowed full and ample argument and comment by all
who sought to be heard. That Lone Star never sought leave to file its reply, made no attempt
to reply, and never objected to the Board proceeding to the merits were strategic decisions
made by Lone Star.

 Although Lone Star argues on appeal that "there was no justification for
denying a continuance to allow Lone Star to have time to file its replies to Winnebago's
untimely exceptions," Lone Star, in fact, never sought a continuance, and the Board did not
deny a request by Lone Star for a continuance. Instead, Lone Star acquiesced in the Board's
proceeding to consider the merits at both hearings. We conclude that the Board did not
engage in an unlawful procedure by accepting and considering the exceptions; rather, we
hold that the Board properly exercised its discretion "in the interest of justice."

 Even if we were to find, however, that the Board engaged in an unlawful
procedure, the task at hand is to determine whether Lone Star's substantial rights were
prejudiced by the Board's consideration of the exceptions. See Tex. Gov't Code Ann. §
2001.174(2). Lone Star does not point to a single argument that it was not permitted to fully
make either in its own exceptions or in argument to the Board. Finding that the purpose of
the rules--to ensure a fair, just, and effective adjudication of the parties' rights--was served,
and that no prejudice to Lone Star's substantial rights occurred, we overrule its first three
issues.


B. Board's Finding of "Threats of Violence"

 By its fourth issue, Lone Star contends that the Board's reliance on a finding
of "threats of violence" to support its decision to terminate the franchise is not supported by
evidence in the record. Lone Star does not contend that the Board's order is not supported
by substantial evidence; rather, it urges that in focusing unduly on an isolated incident, the
Board disregarded the statutory criteria for termination and relied on evidence outside the
record. Appellees contend that Lone Star waived its complaint (9) and that the evidence was
sufficient to support the Board's order.

 The record reflects that, as the relationship between the parties deteriorated,
harsh words were exchanged. As one of its grounds to support the termination, Winnebago
asserted that Lone Star's conduct was injurious to consumers. Specifically, Winnebago
argued that Lone Star did not maintain a current inventory, its actual sales did not meet
projections and goals agreed to between the parties, (10) and Lone Star disparaged Winnebago
products to consumers and otherwise failed to actively promote them. Winnebago also
contended that the tension and strife between the parties was injurious to the public.

 Although Lone Star does not specify the finding to which it objects, in
referring to "threats of violence" and "an aging stroke victim's statement to a third party,"
we construe its complaint to challenge finding of fact 37. This finding relates to a telephone
conversation between Bruce Byrne and a Winnebago employee in which Byrne threatened
to throw Larry Gram, a Winnebago sales manager, off Lone Star's lot if he appeared at the
dealership. Because Byrne was physically incapable of carrying out the threat, Lone Star
contends that Winnebago misconstrued Byrne's hyperbolic outburst and challenges whether
this isolated statement supports the finding of fact. Because two Board members made
general references to violence in the workplace, Lone Star also objects to the Board's
consideration of this evidence because it is outside the record.

 Acknowledging that Byrne was not physically capable of carrying out the
threat, the administrative law judge found in finding of fact 71 of the original proposal for
decision that "Byrne threatened to throw Mr. Gram off the dealership lot" and that the
"manufacturer is concerned for the physical safety of his employees who call on Lone Star
under the threat of physical violence." This finding was carried over verbatim as finding of
fact 37 in the Board's final order.

 When the evidence is contradictory, we resolve any conflict in favor of the
agency's decision. Auto Convoy Co. v. Railroad Comm'n, 507 S.W.2d 718, 722 (Tex. 1974). 
In determining whether a finding of fact is reasonably supported by substantial evidence, we
may not substitute our judgment for that of the agency on the weight of the evidence. Tex.
Gov't Code Ann. § 2001.174. We must, however, test the disputed finding against evidence
in the record to determine whether such relevant evidence exists as a reasonable mind might
accept as adequate to support a finding of fact. Lauderdale v. Texas Dep't of Agric., 923
S.W.2d 834, 836 (Tex. App.--Austin 1996, no writ).

 The evidence in the record supports the challenged finding. In addition to the
testimony of Jack Berringer, the district sales manager for Winnebago, and Larry Gram, the
Western sales manager for Winnebago, the record contains a dealer contact report describing
the incident. We conclude that reasonable minds could infer or find from evidence in the
record that Byrne made the statement attributed to him and that Winnebago was reasonably
concerned for its employees who might call upon the dealer.

 Even apart from the "threat" incident, there was substantial evidence of verbal
abuse, hostility, and profanity in the record. The findings of fact contain other findings
relating to this type of unprofessional conduct and hostility. Jack Berringer testified about
several incidents where Winnebago employees were subjected to profane verbal abuse by
Byrne. Gram, too, testified to various episodes of verbal abuse, stating that "in my 20 years
in this business, I've never seen a situation develop to the point that this one has developed." 
Ron Post, the service district manager and special projects manager for Winnebago, testified
regarding profane language directed toward him by Gordon Byrne, Lone Star's vice
president. The record also contains documentation in the form of Winnebago dealer contact
reports and internal memoranda which graphically describe various incidents. The Board's
decision was not based on an isolated outburst or a single finding. Lone Star does not
challenge the findings relating to other incidents of profane, harsh and abusive language. 
Moreover, the record discloses that the Board made other findings of fact that support the
ultimate findings on the statutory criteria required under section 5.02(b)(5) of the Act, none
of which are challenged by Lone Star. See Tex. Rev. Civ. Stat. Ann. art. 4413(36), §
5.02(b)(5) (West Supp. 2001). 

 The gist of Lone Star's challenge to the finding seems to be that comments
made by Board members at the November hearing indicate that they were swayed by current
events, rather than by evidence in the record. Because two members made brief references
to "taking threats in the workplace seriously," Lone Star contends that the Board's decision
to terminate was based on concerns of workplace violence not in the record, rather than the
evidence before the Board. 

 We have previously held that it is immaterial what a board member may have
said in arriving at her decision and that we look instead to whether the order is reasonably
sustained by appropriate findings and conclusions that have support in the evidence. City of
Frisco v. Texas Water Rights Comm'n, 579 S.W.2d 66, 72 (Tex. Civ. App.--Austin 1979,
writ ref'd n.r.e.). To the extent these isolated references may be construed to be references
to news events, they are immaterial. On the record before us, however, they can more likely
be read to reflect the Board's struggle in apportioning blame and assessing responsibility for
the deteriorating franchise relationship. As Board members considered the various options
available to them, their deliberations exhibited caution and concern, rather than arbitrariness
or capriciousness. They based their decision on statutory criteria supported by evidence in
the record. We may not substitute our judgment for that of the agency as to the weight of the
evidence on questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174;
see also Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc., 665 S.W.2d 446,
452 (Tex. 1984). We therefore overrule Lone Star's fourth issue.


C. Board's Rejection of Proposal for Decision 

 In its fifth issue, Lone Star complains of the Board's reversal of the proposal
for decision prepared by the administrative law judge. Appellees contend that Lone Star has
waived this complaint because it was not contained in Lone Star's motion for rehearing
submitted to the Board. We agree. This complaint was not presented in any fashion to the
Board in Lone Star's motion for rehearing, nor was it presented to the trial court. A motion
for rehearing must be sufficiently definite to apprise the agency of the error claimed and to
allow the agency the "opportunity to correct the error or to prepare to defend it." Suburban
Util. Corp. v. Public Util. Comm'n of Texas, 652 S.W.2d 358, 365 (Tex. 1983); Wilmer-Hutchins Indep. Sch. Dist. v. Brown, 912 S.W.2d 848, 852-53 (Tex. App.--Austin 1995, writ
denied); see also Tex. Gov't Code Ann. § 2001.145 (West 2000); Tex. R. App. P. 33.1 (to
preserve complaint for appellate review the record must show that the complaint was made
to the trial court); Gonzales v. Texas Educ. Agency, 882 S.W.2d 526, 527 (Tex.
App.--Austin 1994, no writ). Because Lone Star failed to preserve this complaint for
review, we overrule its final issue.


CONCLUSION


 Having overruled all of Lone Star's issues, we affirm the district court's final
judgment which upheld the Board's order finding that Winnebago had established good
cause for the termination of Lone Star's Winnebago franchise.



 
 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: May 31, 2001

Publish

1. See Tex. Gov't Code Ann. § 2001.171 (West 2000).
2. See Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 7.01(a) (West Supp. 2001). We refer to the
Motor Vehicle Commission Code as "the Act." Id. §§ 1.02-7.01. 
3. Where appropriate, we will refer jointly to the Board and Winnebago as appellees. 
4. Section 5.02(b)(3) of the Act requires that, if a dealer files a timely protest with the Board,
a termination of the agreement is not effective until the Board makes a determination that the party
seeking termination has demonstrated by a preponderance of the evidence that there is good cause
for the termination. Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 5.02(b)(3) (West Supp. 2001). 
5. Under the Board's rules of practice and procedure, the parties were required to file
exceptions within twenty days of service of the proposal for decision. See 16 Tex. Admin. Code
§ 101.60 (2001).
6. Under the "mailbox rule," the exceptions were required to be received by the Board by
October 12. See id. § 101.13(c) ("[D]elivery by mail shall be complete only if such deposit is made
on or before said date and the document is received in hand by the Board at its office in Austin not
later than the fifth Board business day after the date of such deposit.").
7. Lone Star was entitled to ten days from the date of filing of the exceptions to file a reply. 
See id. § 101.62. A Board rule also prohibits the filing of any material within fifteen days of a Board
meeting at which a case will be considered and decided. Id. § 101.63. Because October 20--the
day Winnebago's exceptions were filed--was the fifteenth day before the Board meeting, and Lone
Star claims that it did not learn of the filing until the next day when it received Bray's facsimile,
Lone Star contends that it was foreclosed from filing a reply. 
8. The Board voted three to two in favor of the motion to allow termination, with Chairman
Barnes voting against the motion.
9. Appellees contend that Lone Star was required in its Motion for Rehearing to specify the
particular findings or conclusions of which it complains. Because we are able to identify the finding,
we will assume Lone Star has not waived error on this issue.
10. Good cause may not be shown by the desire of a manufacturer for market penetration. 
Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 5.02(b)(5) (West Supp. 2001).


ppellees contend that Lone Star has
waived this complaint because it was not contained in Lone Star's motion for rehearing
submitted to the Board. We agree. This complaint was not presented in any fashion to the
Board in Lone Star's motion for rehearing, nor was it presented to the trial court. A motion
for rehearing must be sufficiently definite to apprise the agency of the error claimed and to
allow the agency the "opportunity to correct the error or to prepare to defend it." Suburban
Util. Corp. v. Public Util. Comm'n of Texas, 652 S.W.2d 358, 365 (Tex. 1983); Wilmer-Hutchins Indep. Sch. Dist. v. Brown, 912 S.W.2d 848, 852-53 (Tex. App.--Austin 1995, writ
denied); see also Tex. Gov't Code Ann. § 2001.145 (West 2000); Tex. R. App. P. 33.1 (to
preserve complaint for appellate review the record must show that the complaint was made
to the trial court); Gonzales v. Texas Educ. Agency, 882 S.W.2d 526, 527 (Tex.
App.--Austin 1994, no writ). Because Lone Star failed to preserve this complaint for
review, we overrule its final issue.


CONCLUSION


 Having overruled all of Lone Star's issues, we affirm the district court's final
judgment which upheld the Board's order finding that Winnebago had established good
cause for the termination of Lone Star's Winnebago franchise.



 
 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: May 31, 2001

Publish

1. See Tex. Gov't Code Ann. § 2001.171 (West 2000).
2. See Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 7.01(a) (West Supp. 2001). We refer to the
Motor Vehicle Commission Code as "the Act." Id. §§ 1.02-7.01. 
3. Where appropriate, we will refer jointly to the Board and Winnebago as appellees. 
4. Section 5.02(b)(3) of the Act requires that, if a dealer files a timely protest with the Board,
a termination of the agreement is not effective until the Board makes a determination that the party
seeking termination has demonstrated by a preponderance of the evidence that there is good cause
for the termination. Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 5.02(b)(3) (West Supp. 2001). 
5. Under the Board's rules of practice and procedure, the parties were required to file
exceptions within twenty days of service of the proposal for decision. See 16 Tex. Admin. Code
§ 101.60 (2001).
6. Under the "mailbox rule," the exceptions were required to be received by the Board by
October 12. See id. § 101.13(c) ("[D]elivery by mail shall be complete only if such deposit is made
on or before said date and the document is received in hand by the Board at its office in Austin not
later than the fifth Board business day after the date of such deposit.").
7. Lone Star was entitled to ten days from the date of filing of the exceptions to file a reply. 
See id. § 101.62. A Board rule also prohibits the filing of any material within fifteen days of a Board
meeting at which a case will be considered and decided. Id. § 101.63. Because October 20--the
day Winnebago's exceptions were filed--was the fifteenth day before the Board meeting, and Lone
Star claims that it did not learn of the filing until the next day when it received Bray's facsimile,
Lone Star contends that it was foreclosed from filing a reply. 
8. The Board voted three to two in favor of the motion to allow termination, with Chairman
Barnes voting against the motion.
9. Appellees contend that Lone Star was required in its Motion for Rehearing to specify the
particular findings or conclusions of which it complains. Because we are able to identify the finding,
we will assume Lone Star has not waived error on this issue.
10. Good cause may not be shown by the desir